PEOPLE v CAZAL

Docket No. 66646. Argued October 13, 1981 (Calendar No. 6).—Decided March 2, 1982.

Anibal Cazal was charged with four counts of felonious assault. The Oakland Circuit Court, Francis X. O'Brien, J., sitting as the trier of fact, convicted the defendant of the lesser included offense of intentionally discharging a firearm aimed at another without malice. The Court of Appeals, R. M. Maher and Hoffius, JJ. (Beasley, P.J., dissenting), reversed the decision of the trial court and vacated the defendant's conviction in an unpublished per curiam opinion (Docket No. 49683). The Court of Appeals held that the rule adopted in *People v Chamblis,* 395 Mich 408 (1975), that in any criminal case where the charged offense is punishable by incarceration for more than two years the trial court, regardless of a request by the defendant, may not instruct the jury on lesser included offenses for which the maximum allowable incarceration period is one year or less applied to nonjury trials, and that the trial court's consideration of the lesser included offense constituted error requiring reversal. The people appeal by leave granted.

In a unanimous opinion by Chief Justice Coleman, the Supreme Court *held:*

1. The rule limiting a jury's consideration of certain lesser included offenses applies only to jury trials. It was adopted pursuant to the supervisory power of the Supreme Court over the courts of Michigan as a prophylactic measure designed to reduce the possibility of prejudice to a defendant, and not pursuant to constitutional or statutory requirements.

2. The underlying policies of the rule which are aimed at

REFERENCES FOR POINTS IN HEADNOTES

[1] 21 Am Jur 2d, Criminal Law § 551.
75 Am Jur 2d, Trial § 876.
Lesser offenses "necessarily included" in offense charged, under Rule 31[c] of Federal Rules of Criminal Procedure. 11 ALR Fed 173.
[2] 75 Am Jur 2d, Trial § 880.
[3-7] 75 Am Jur 2d, Trial §§ 876-882.
[6, 7] 20 Am Jur 2d, Courts § 115.

improving the factfinder's performance apply in a jury trial where confusion of the trier of fact through the presentation of an unmanageable number of resolutions is possible and where limitation of the potential for inappropriate compromise verdicts is desired. However, where a trial judge sits as the trier of fact, these policies are less compelling because of the difference in his role. Unlike the jury, a trial judge should be aware of lesser included offenses without the need for instruction, and the possibility that consideration of misdemeanor offenses will confuse or prejudice the judge's deliberations is significantly less. When a trial judge sits as a trier of fact, his role is more circumscribed than that of the jury by the requirement that he articulate the facts found and the conclusions of law upon which the judgment is based and by the stricter standard of review applied on appeal, and thus the possibility of an inappropriate compromise judgment is significantly reduced or eliminated. Therefore, the rule, while specifically applicable to jury trials, does not apply in cases where the trial judge sits as the trier of fact.

3. The rule is not extended to bench trials by the provision of the Code of Criminal Procedure relating to bench and jury trials. Those provisions do not prohibit the Supreme Court from exercising its supervisory power over the courts of Michigan to accord defendants fair trials. The rule was designed to protect the integrity of jury deliberations, and its application to bench trials would be needless.

4. The application of the rule only to jury trials is based on the rational distinction between the functions of the jury and the functions of the judge when sitting as the trier of fact and does not deny a criminal defendant the equal protection of the law.

5. The decision of the Court in this case will become effective in all other cases in which trial is commenced after the date of the decision.

Reversed, and conviction and sentence reinstated.

1. CRIMINAL LAW — LESSER INCLUDED OFFENSES — MISDEMEANORS — JURY INSTRUCTIONS — POLICY.

The rule that in any criminal case where the charged offense is punishable by incarceration for more than two years the trial court, regardless of a request by the defendant, may not instruct the jury on lesser included offenses for which the maximum allowable incarceration period is one year or less, was adopted pursuant to the supervisory power of the Supreme Court over the courts of Michigan as a prophylactic measure,

designed to reduce the possibility of prejudice to the defendant, and not pursuant to constitutional or statutory requirements (Const 1963, art 6, § 5).

2. CRIMINAL LAW — LESSER INCLUDED OFFENSES — JURY INSTRUCTIONS — POLICY.

The rule limiting a jury's consideration of certain lesser included offenses in felony trials incorporated policies designed to assure a defendant a fair trial, including limiting the number of charges the defendant would be forced to defend, providing the defendant with fair notice of the charges, avoiding undue confusion of the jury by presenting it with a limitless array of possible verdicts, and limiting the number of compromise resolutions where they are inappropriate.

3. CRIMINAL LAW — LESSER INCLUDED OFFENSES — POLICY — BENCH TRIALS.

The applicability of the policies underlying the adoption of the rule limiting a jury's consideration of certain lesser included offenses in felony trials is affected by a change in the role of the trier of fact, and reasons for imposing policies appropriate where a jury sits as the trier of fact are less compelling in the context of a bench trial.

4. CRIMINAL LAW — BENCH TRIALS — COMPROMISE JUDGMENTS.

The role of a trial judge sitting as the trier of fact in a criminal case is more circumscribed than the role of a jury, significantly reducing or eliminating the possibility of an inappropriate compromise judgment because the judge's duty to find facts based on the evidence presented and to apply the law to those facts is reinforced by the requirement that the judge must articulate the facts found and the conclusions of law upon which his judgment is based, and on appeal a stricter standard of review is applied to findings of a trial judge.

5. CRIMINAL LAW — LESSER INCLUDED OFFENSES — JURY INSTRUCTIONS — JURY TRIALS — BENCH TRIALS.

The rule limiting a jury's consideration of certain lesser included offenses in felony trials is specifically applicable to jury trials and does not apply in cases in which a trial judge sits as the trier of fact because of the differences in the functions performed by a jury and a trial judge sitting as the factfinder.

6. CRIMINAL LAW — LESSER INCLUDED OFFENSES — POLICY.

The provisions of the Code of Criminal Procedure relating to bench trials and jury trials does not prohibit the Supreme

Court from exercising its supervisory power over the courts of Michigan to accord criminal defendants fair trials and does not require that the rule limiting a jury's consideration of certain lesser included offenses in felony trials, which incorporated policies specifically directed at jury trials, be extended to bench trials (Const 1963, art 6, § 5; MCL 763.4; MSA 28.857).

7. CRIMINAL LAW — LESSER INCLUDED OFFENSES — JURY INSTRUCTIONS — EQUAL PROTECTION.

The application of the rule limiting consideration of certain lesser included offenses in felony trials only to jury trials is based on the rational distinction between the functions of the jury and the functions of the judge when sitting as the trier of fact and does not deny a criminal defendant the equal protection of the law (US Const, Am XIV).

*Frank J. Kelley,* Attorney General, *Robert A. Derengoski,* Solicitor General, *L. Brooks Patterson,* Prosecuting Attorney, *Robert C. Williams,* Chief Appellate Counsel, and *Richard H. Browne,* Assistant Prosecuting Attorney, for the people.

*Richard P. King* and *Donald W. Grant* for defendant.

COLEMAN, C.J. The issue is whether the rule announced in *People v Chamblis,* 395 Mich 408; 236 NW2d 473 (1975), applies when a trial judge sits as a trier of fact. We hold that the *Chamblis* rule is applicable only to jury trials.

I

Defendant was charged with four counts of felonious assault[1] arising from a shooting incident. Following a bench trial, the trial judge found defendant not guilty of felonious assault, but guilty of intentionally discharging a firearm aimed

[1] MCL 750.82; MSA 28.277. Felonious assault is a felony punishable by imprisonment for not more than four years or by a fine of not more than $2,000, or both. MCL 750.503; MSA 28.771.

at another without malice.[2] The Court of Appeals vacated the conviction because it violated the *Chamblis* rule.[3]

## II

In *Chamblis, supra,* 429, this Court stated:

"We are establishing a rule today, as a matter of policy, limiting the extent of compromise allowable to a jury in deciding whether to convict of a lesser included offense. In any case wherein the charged offense is punishable by incarceration for more than two years, the court, whether or not requested, may not instruct on lesser included offenses for which the maximum allowable incarceration period is one year or less."

The *Chamblis* rule is more easily understood when viewed in the context in which it was announced. On December 18, 1975, this Court simultaneously released nine opinions addressing issues concerning jury instructions in criminal cases.[4] The opinions not only resolved their respective cases, but also were designed to provide some uniformity and direction, see *People v Ora Jones,* 395 Mich 379, 395; 236 NW2d 461 (1975); *People v*

---

[2] MCL 750.234; MSA 28.431. Intentionally discharging a firearm aimed at another person without malice is a misdemeanor punishable by imprisonment for not more than one year or by a fine of not more than $500.

[3] The Court of Appeals opinion in this case is unpublished. However, in *People v Minier,* 100 Mich App 114; 299 NW2d 383 (1980), *lv den* 411 Mich 902 (1981), and *People v Brown,* 87 Mich App 612; 274 NW2d 854 (1978), the Court held that the *Chamblis* rule did not apply to bench trials.

[4] See *People v Henry,* 395 Mich 367; 236 NW2d 489 (1975), *People v Ora Jones,* 395 Mich 379; 236 NW2d 461 (1975), *People v Chamblis,* 395 Mich 408; 236 NW2d 473 (1975), *People v Carter,* 395 Mich 434; 236 NW2d 500 (1975), *People v Jenkins,* 395 Mich 440; 236 NW2d 503 (1975), *People v Paul,* 395 Mich 444; 236 NW2d 486 (1975), *People v Burden,* 395 Mich 462; 236 NW2d 505 (1975), and *People v Mann,* 395 Mich 472; 236 NW2d 509 (1975).

*Henry,* 395 Mich 367, 374; 236 NW2d 489 (1975). Among the issues addressed were (1) when a judge must grant a defendant's request for a lesser offense instruction and (2) when a judge, *sua sponte,* must, may, and may not give an instruction on a lesser offense.

The Court recognized that the common-law definition of lesser offenses had expanded from "necessarily included offenses" to encompass "cognate offenses", *Ora Jones, supra,* 387. This decision significantly expanded the number of instructions which may be appropriate in a case. The decision also created the possibility that so many instructions might be given as to create confusion among the jurors and deny defendant a fair trial.

Therefore, in *Chamblis, supra,* the Court announced a rule to limit the number of offenses the jury could consider. The *Chamblis* rule was not based on any finding that jury consideration of certain offenses or a certain number of offenses was prejudicial per se. The rule is a prophylactic measure designed to reduce the possibility of prejudice. In short, the *Chamblis* rule was not adopted as a matter of constitutional or statutory law, but as a matter of policy pursuant to this Court's supervisory power over the courts of Michigan, Const 1963, art 6, § 5.

Designed towards assuring a fair trial, the *Chamblis* rule incorporated several policies which included:

(1) limiting the number of charges which a defendant would be forced to defend,

(2) providing the defendant with fair notice of the charges he or she must defend,

(3) avoiding undue confusion of the jury by presenting it with a limitless array of possible verdicts, and

(4) limiting the number of compromise resolutions, when such resolutions may be inappropriate.

## III

The first two policies focus on the defendant's ability to present a defense. The latter ones concern improving the factfinder's performance. Accordingly, a change in the role of the factfinder may affect the applicability of some of these policies. In the instant case, the Court must determine whether the change of the factfinding functions from the jury to the trial judge affects the validity of the policies underlying the *Chamblis* rule.

The third policy, enumerated above, concerns the possibility of confusing the factfinder by presenting it with an unmanageable number of possible resolutions.

In *Henry, supra,* 373, the Court proceeded from the premise that a jury is not aware of possible verdicts until it receives instructions from the trial judge. Presenting the jury with an undue number of offenses, elements and possible verdicts creates a danger of possible confusion of the jury. The *Chamblis* rule was designed to reduce the danger of this possibility by restricting the number of alternatives presented, while at the same time providing for consideration of those offenses which more closely approximate the conduct charged.

In contrast to a jury, a trial judge should be aware of lesser included offenses without the need for instruction. In *People v Murray,* 72 Mich 10, 16; 40 NW 29 (1888), the Court stated:

"Without any requests from counsel it is the duty of

the circuit judge to see to it that the case goes to the jury in a clear and intelligent manner, so that they may have a clear and correct understanding of what it is they are to decide, and he should state to them fully the law applicable to the facts. Especially is this his duty in a criminal case. * * * Too much reliance is often placed upon counsel by the court in this respect for requests; but this should not be done. The court must do its duty in a criminal case, whether counsel do so or not. It is to the court that the accused has a right to look to see that he has a fair trial."

This duty and the trial judge's knowledge of the law, plus his opportunity for study and reflection before rendering a decision, significantly reduce any possibility that the consideration of misdemeanor offenses will confuse or prejudice the judge's deliberations.

Therefore, the third policy underlying the *Chamblis* rule is less compelling when considered in the context of a bench trial.

The fourth enumerated policy of the *Chamblis* rule is to limit the potential for compromise verdicts in situations in which they are not appropriate. The Court recognized the possibility of compromise verdicts and that instructions on lesser offenses increased this possibility, *Chamblis, supra,* 426. Although some compromise verdicts may be assailable in logic, they are supportable because of the jury's role in our criminal justice system, see *People v Vaughn,* 409 Mich 463; 295 NW2d 354 (1980). In *Chamblis, supra,* 426-427, the Court summarized the jury's role, stating:

"Juries in criminal cases often find defendants not guilty or find persons who have committed the charged greater offense guilty of only a lesser offense in the face of the evidence for reasons satisfactory to them. 'The very essence of the jury's function is its role as spokes-

man for the community conscience in determining whether or not blame can be imposed.' *United States v Dougherty,* 154 US App DC 76, 105; 473 F2d 1113, 1142 (1972) (Bazelon, C.J., *dissenting).* The observation was made by the United States Supreme Court in *Duncan v Louisiana,* 391 US 145, 157; 88 S Ct 1444; 20 L Ed 2d 491 (1968) that:

" 'the most recent and exhaustive study of the jury [Kalven and Zeisel, *The American Jury* (1966)] in criminal cases concluded that juries do understand the evidence and come to sound conclusions in most of the cases presented to them and that when juries differ with the result at which the judge would have arrived, it is usually because they are serving some of the very purposes for which they were created and for which they are now employed.' "

The Court also referred to the unimpeachable nature of the jury's verdict, stating:

"We do not deny that the possibility of compromise exists. However, as Justice Holmes noted in *Dunn v United States,* 284 US 390, 394; 52 S Ct 189; 76 L Ed 356 (1932): 'That the verdict may have been the result of compromise, or of a mistake on the part of the jury is possible. But verdicts cannot be upset by speculation or inquiry into such matters.'

"While we will not 'speculate', as an appellate court it is our responsibility to review jury verdicts to determine whether they are supported by evidence." *Chamblis, supra,* 426.

While recognizing the historical role of the jury, the Court noted that the appropriateness of compromise verdicts was not without limits, stating:

"We are convinced that the cause of justice is not well served by convicting of assault and battery a defendant charged with murder. *As a matter of policy*

*people who commit serious crimes should be punished for those offenses, and those who did not commit such serious crimes should not be tried for those crimes only to be found guilty of a much lower offense.* In the example cited, if the most serious offense for which a jury feels conviction is justified is assault and battery, the original charge of murder appears to bear no realistic relationship to the offense committed, and no good purpose would be served by allowing such an instruction.

"At some point, both the defendant and the prosecution should be able to prevent any further potential for 'compromise'." *Chamblis, supra,* 428. (Emphasis added.)

When a trial judge sits as a trier of fact, the judge's role is more circumscribed and the possibility of an inappropriate compromise judgment is significantly reduced or eliminated. The judge's duty is to find facts based on the evidence presented and to apply the law to those facts. This duty is reinforced by the requirement that the judge articulate the facts found and the conclusions of law upon which the judgment is based, GCR 1963, 517.1, *People v Jackson,* 390 Mich 621; 212 NW2d 918 (1973). Also, the stricter standard of review applied on appeals from a trial judge's findings of fact, see *People v Hubbard,* 387 Mich 294; 196 NW2d 768 (1972), is a reflection of the differences between the roles performed by a judge and a jury.

By the terms of the *Chamblis* rule and the context of the cases in which it was formulated, the rule is specifically applicable to jury trials. For these reasons and because of the differences in the functions performed by the jury and the judge sitting as factfinder, we hold that the *Chamblis* rule does not apply in cases in which the trial judge sits as a trier of fact.

## IV

Defendant responds that even if the policies underlying the *Chamblis* rule do not apply in bench trials, the Code of Criminal Procedure requires that the same rules apply in bench trials and jury trials. MCL 763.4; MSA 28.857, which predates *Chamblis,* provides:

"In any case where a defendant waives his right to a trial by jury and elects to be tried by the judge of such court as provided in section 3 of this chapter any judge of the court in which said cause is pending shall have jurisdiction to proceed with the trial of said cause, and shall proceed to hear, try and determine such cause in accordance with the rules and in like manner as if such cause were being tried before a jury."

Defendant concludes that this provision requires that the *Chamblis* rule be applied in bench trials. We disagree.

The Code of Criminal Procedure was amended subsequent to *Chamblis* to provide that:

"Except as provided in subsection (2), [concerning controlled substance offenses] upon an indictment for an offense, consisting of different degrees, as prescribed in this chapter, the jury, or the judge in a trial without a jury, may find the accused not guilty of the offense in the degree charged in the indictment and may find the accused person guilty of a degree of that offense inferior to that charged in the indictment, or of an attempt to commit that offense." MCL 768.32; MSA 28.1055.

Neither of these statutory provisions prohibit this Court from exercising its supervisory powers over the courts of Michigan, Const 1963, art 6, § 5, to accord defendants fair trials as required by the constitution.

The *Chamblis* rule was designed to provide further assurance that a defendant would receive a

fair trial by jury. The policies reflected in the rule are specifically directed to jury trials. In other contexts, the Court has adopted or upheld rules designed to protect the integrity of jury deliberations without needlessly applying the same rules to bench trials.[5] The *Chamblis* rule is an example of this type of rule. Accordingly, MCL 763.4; MSA 28.857 does not require that the *Chamblis* rule be extended to bench trials.

## V

Defendant also claims that the failure to apply the *Chamblis* rule to bench trials lacks a rational basis and denies him equal protection of the law, US Const, Am XIV, Const 1963, art 1, § 2. For the reasons stated above, there clearly is a rational basis for distinguishing between bench trials and jury trials. Accordingly, the decision not to apply *Chamblis* to bench trials after a defendant has waived trial by jury does not deny the defendant equal protection of the law.

This decision will become effective in all other cases in which trial is commenced after the date hereof.

The decision of the Court of Appeals is reversed and defendant's conviction and sentence are reinstated.

KAVANAGH, WILLIAMS, LEVIN, FITZGERALD, RYAN, and BLAIR MOODY, JR., JJ., concurred with COLEMAN, C.J.

---

[5] For example, a trial judge was once required, and now may order, that a jury be sequestered during its deliberations, see 1893 PA 176, MCL 768.16; MSA 28.1039. However, a trial judge, sitting as a trier of fact, is not required to sequester himself until a final decision is announced. Neither is voir dire required in the absence of a jury. A trial judge, sitting as a factfinder, is not subject to any peremptory challenges. Instructions on the law to be applied are not required to be given in open court.